## COMMONWEALTH *vs.* RICHARD LOWDER.

Bristol. May 4, 2000. - July 10, 2000.

Present: MARSHALL, C.J., ABRAMS, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Supreme Judicial Court,* Jurisdiction, Superintendence of inferior courts. *Practice, Criminal,* Required finding, Judicial discretion. *Constitutional Law,* Double jeopardy, Separation of powers. *Judge.*

A petition for relief under G. L. c. 211, § 3, was the appropriate procedure to review a judge's entry of verdicts of not guilty on criminal indictments after the prosecutor delivered his opening statement and over the prosecutor's objection, where the issue of double jeopardy was not meritless in the circumstances. [93-94]

A judge at a criminal trial has inherent authority to direct verdicts in favor of the defendant after the prosecutor's opening statement, where the evidence to be presented is insufficient to warrant a finding of guilty [94-100], and the exercise of such authority is not in contravention of art. 30 of the Massachusetts Declaration of Rights [100].

Discussion of circumstances in which the entry of a finding of not guilty after an opening statement might be warranted. [100-103]

In the circumstances of a criminal case, the judge erred in directing, on his own motion, verdicts in favor of the defendant after the prosecutor's opening statement and over the prosecutor's objection, where the prosecutor was deprived of an opportunity to be heard on the decision and where the judge did not consider any alternative action [103], but principles of double jeopardy barred retrial of the indictments [103-106].

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on May 6, 1999.

The case was heard by *Lynch,* J.

*John D. Moses,* Assistant District Attorney, for the Commonwealth.

*Paul J. Machado* for the defendant.

SPINA, J. At the trial of this criminal case, the trial judge entered findings of not guilty shortly after the prosecutor delivered his opening statement to the jury. We are asked to decide whether the judge acted within his authority. We conclude that judges have the power to enter findings of not

guilty at the early stages of trial, that they should exercise this power only rarely, and that the judge abused his discretion by exercising it as he did in this case. We also conclude that double jeopardy principles bar the Commonwealth from trying the defendant anew for the offenses of which the judge acquitted him.

The defendant, Richard Lowder, was indicted and put on trial for two narcotics offenses. After a jury were empaneled, the prosecutor delivered his opening statement. A recess was declared, during which defense counsel objected to parts of the statement. The judge questioned the prosecutor briefly and announced that the statement did not state a case sufficient to be presented to a jury. Ignoring the prosecutor's request to be heard on the matter, the judge entered verdicts of not guilty on both indictments over the prosecutor's objection. Defense counsel did not object to the judge's action. The trial ended.

The Commonwealth petitioned this court pursuant to G. L. c. 211, § 3, for a declaration that a trial judge lacks the authority to enter a required finding of not guilty until the Commonwealth rests its case and for an order reinstating the prosecution in this case. A single justice denied the petition. The Commonwealth appealed from his decision to the full court.

1. *This court's jurisdiction to hear the Commonwealth's petition pursuant to G. L. c. 211, § 3.* The single justice rightly held that this court has jurisdiction to hear the petition. The Commonwealth has no other remedy for the error that it claims the trial judge committed by entering the required finding. See *Commonwealth* v. *Super,* 431 Mass. 492, 495 n.5 (2000). See generally *McGuinness* v. *Commonwealth,* 420 Mass. 495, 497 (1995); *Commonwealth* v. *Lam Hue To,* 391 Mass. 301, 306 n.4 (1984). No rule or statute authorizes the Commonwealth to appeal from a required finding of not guilty entered before the Commonwealth has closed its case.[1]

It might be argued that the Commonwealth can obtain an

---

[1]General Laws c. 278, § 28E, which in relevant part provides that the Commonwealth may appeal from the allowance of "a motion for appropriate relief under the Massachusetts Rules of Criminal Procedure," does not authorize the Commonwealth to appeal the entry of the finding of not guilty in this case. Rule 25 of the Rules of Criminal Procedure does not provide that judges may allow a motion for a finding of not guilty after an opening statement. Nor does any other rule. A judge's allowance of such a motion is therefore not "relief under the . . . [r]ules" and cannot be appealed pursuant to § 28E. See *Commonwealth* v. *Yelle,* 390 Mass. 678, 684 (1984). Cf. *Commonwealth* v.

adequate remedy by bringing a new indictment. The new indictment would presumably be dismissed as barred by double jeopardy. The Commonwealth would then be free to appeal the dismissal pursuant to Mass. R. Crim. P. 15 (a) (1), 378 Mass. 883 (1979), and G. L. c. 278, § 28E. See *Commonwealth* v. *Jenkins*, 431 Mass. 501, 504 (2000). If the defendant's motion to dismiss the new indictment were to be denied, the defendant could appeal the denial to this court pursuant to G. L. c. 211, § 3. See *Powers* v. *Commonwealth*, 426 Mass. 534, 534-535 & 534 n.1 (1998). Requiring the Commonwealth to resort to such a procedure would cause needless delay. See *A Juvenile* v. *Commonwealth*, 380 Mass. 552, 556 (1980).

We caution that we might exercise our discretion under G. L. c. 211, § 3, differently (as might a single justice) in other cases — for instance, if the Commonwealth's argument as to double jeopardy was clearly meritless and if for that reason its petition raised no questions of importance. Cf. *Richardson* v. *United States*, 468 U.S. 317, 322, 326 n.6 (1984); *Villalta* v. *Commonwealth*, 428 Mass. 429, 433 (1998). Our extraordinary powers under the statute are not for ordinary cases. See *Adams* v. *Cumberland Farms, Inc.*, 420 Mass. 807, 808 (1995). In this case, however, the Commonwealth may plausibly claim that it does not know with certainty whether retrial is possible. See *Commonwealth* v. *Super*, *supra* at 495 n.5 ("After the defendant was placed in jeopardy, the Commonwealth correctly invoked G. L. c. 211, § 3, to test the claim of jeopardy"). Cf. *Commonwealth* v. *Jenkins*, *supra* (G. L. c. 211, § 3, relief is not available when "the Commonwealth is not precluded from prosecuting the case on a new indictment").

2. *The authority of judges to enter a finding of not guilty at the early stages of trial.* The Commonwealth claims that the judge lacked the power to enter a finding of not guilty after the prosecutor's opening. We reject the Commonwealth's argument.

Rule 25 (a) of the Massachusetts Criminal Rules of Procedure, 378 Mass. 896 (1979), states in part as follows:

"The judge on motion of a defendant or on his own motion shall enter a finding of not guilty of the offense

*Therrien*, 383 Mass. 529, 535-536 (1981). The statute does provide for appellate review in other circumstances, which are not presented in this case. Compare *Commonwealth* v. *Lam Hue To*, 391 Mass. 301, 306 & n.4 (1984), cited in *Commonwealth* v. *Brusgulis*, 398 Mass. 325, 326 n.1 (1986).

charged in an indictment or complaint or any part thereof after the evidence on either side is closed if the evidence is insufficient as a matter of law to sustain a conviction on the charge."

Rule 25 is derived "with a minimum of change" from the version of G. L. c. 278, § 11, that was in effect prior to the promulgation in 1979 of the Rules of Criminal Procedure. Reporters' Notes to Mass. R. Crim. P. 25, Mass. Ann. Laws, Rules of Criminal Procedure at 254 (Lexis 1997). The rule "conforms in substance to Fed. R. Crim. P. 29." *Id.* See *Commonwealth* v. *Cote*, 15 Mass. App. Ct. 229, 241 (1983).[2] The "practical effect" of the rule "is essentially a change in terminology": it renames the common-law motion for a directed verdict as the motion for a required finding of not guilty. Reporters' Notes to Mass. R. Crim. P. 25, *supra.* Compare Advisory Committee's Notes to Fed. R. Crim. P. 29 ("change of nomenclature" made by rule "does not modify the nature of the motion or enlarge the scope of matters that may be considered"). The rule "does not presume to alter practice as it has developed relative to the directed verdict." Reporters' Notes to Mass. R. Crim. P. 25, *supra* at 255. Cf. Reporters' Notes to Mass. R. Crim. P. 1, *supra* at 11 ("While these rules are intended to constitute a comprehensive code of criminal procedure . . . , nevertheless there are areas of criminal practice which were left unregulated").

The rule is silent as to the power of trial judges to enter a finding of not guilty before the evidence on either side is closed. The rule neither authorizes nor forbids judges to do so. Cf. Uniform Rules of Criminal Procedure, Rule 522(a) comment, 10 U.L.A. App. (Master ed. 1987) (Spec. Pamph. 1992). But cf. *United States* v. *Martin Linen Supply Co.*, 430 U.S. 564, 570 n.8 (1977) (motion for judgment of acquittal under Fed. R. Crim. P. 29 "can be entertained, at the earliest, 'after the evidence on either side is closed' ").

The text of former G. L. c. 278, § 11, offers us more guidance. Between 1855 and 1979, G. L. c. 278, § 11, provided in relevant part that the jury, "after receiving the instructions of

---

[2]Rule 29 of the Federal Rules of Criminal Procedure and Mass. R. Crim. P. 25, as amended, 420 Mass. 1502 (1995), have each been amended since the promulgation of the Massachusetts rules in 1979. The amendments are not relevant to our inquiry in this case.

the court, shall decide, in their discretion, by a general verdict, both the fact and the law involved in the issue, or they may, at their election, find a special verdict."[3] The court, by contrast, was to "superintend the course of the trials, decide upon the admission and rejection of evidence, upon all questions of law raised during the trials and upon all collateral and incidental proceedings, and . . . charge the jury."[4] It would be an understatement to say that the enactment of this language in 1855 was controversial. The language had originally been proposed as an amendment to the Massachusetts Constitution that failed in a close vote to win popular approval in 1853. The amendment was at least in significant part a response to the decision of this court in *Commonwealth* v. *Porter*, 10 Met. 263 (1845), which held that juries are obliged to obey the instructions of judges on questions of law. See Comment, The Changing Role of the Jury in the Nineteenth Century, 74 Yale L.J. 170, 177-183 (1964); M.D. Howe, Juries as Judges of Criminal Law, 52 Harv. L. Rev. 582, 608-610 (1939). In *Commonwealth* v. *Anthes*, 5 Gray 185 (1855), four of the six members of the court held that to the extent the statute conferred on the jury the power to determine questions of law against the directions of the court, the statute violated the State Constitution. See *id.* at 220, 222, 236 (Shaw, C.J., with whom Metcalf and Merrick, JJ., joined); *id.* at 251 (Bigelow, J.); *Commonwealth* v. *Rock*, 10 Gray 4, 5 (1857). *Anthes* made clear "that the jury in criminal trials have no rightful power to determine questions of law against the instructions of the court." *Commonwealth* v. *Davis*, 271 Mass. 99, 100 (1930). See *Commonwealth* v. *Marzynski*, 149 Mass. 68, 73 (1889).

Chief Justice Shaw's opinion in *Anthes* distinguished sharply between questions of law and questions of fact: the former were for the judge to decide, the latter for the jury. See *id.* at 193-194, 198-199 (Shaw, C.J., with whom Metcalf and Merrick, JJ., joined). If there was any doubt after *Anthes* whether the suf-

---

[3]The special verdict was eliminated in criminal cases when the Rules of Criminal Procedure were promulgated. See Reporters' Notes to Mass. R. Crim. P. 27, Mass. Ann. Laws, Rules of Criminal Procedure at 254 (Lexis 1997).

[4]We quote from R. L. 1902, c. 219, § 13, the version of the statute that was in force at the time of the codification of the General Laws. The differences between this version of the statute and older versions are not relevant to the decision of this case. There were no changes in the quoted portion between 1902 and 1979.

ficiency of the evidence to support a conviction was a question of law for the court to decide, that doubt was dispelled five years later in *Commonwealth* v. *Merrill*, 14 Gray 415 (1860), which made clear that judges have the power and the duty to direct verdicts in favor of criminal defendants when the evidence is insufficient to convict them. See *id.* at 418, citing *Commonwealth* v. *Packard*, 5 Gray 101, 103 (1855). Unlike its modern equivalent, the directed verdict at common law was not always a command that jurors were obliged to obey.[5] The decision in *Merrill* was perceived by some as a departure from this more modest understanding of the directed verdict. The decision was cited within a dozen years of its issuance as sole authority for the statement that, "although as a general proposition the sufficiency of the evidence is for the jury, yet, if it is found not to cover every part of the case, the court will, as matter of law, order the prisoner's discharge." 1 J.P. Bishop, Commentaries on the Law of Criminal Procedure § 128, at 76-77 (2d ed. 1872). See *id.* at § 977, at 600 & n.2, citing *Packard, supra,* and *Merrill, supra.* See also Comment, The Motion for Acquittal: A Neglected Safeguard, 70 Yale L.J. 1151, 1152 & n.8 (1961). By that time requests for directed verdicts in criminal cases were quite routine in Massachusetts. See, e.g., *Commonwealth* v. *Certain Intoxicating Liquors*, 105 Mass. 595, 598 (1870); *Commonwealth* v. *Bakeman*, 105 Mass. 53, 56-57, 60-61 (1870); *Commonwealth* v. *Shepard*, 1 Allen 575, 586-587 (1861). Cf. *Oscanyan* v. *Arms Co.*, 103 U.S. 261, 263-264 (1880).

We said in a civil case that "[a] trial judge always has had power to direct a verdict provided the law required it." *Bothwell* v. *Boston Elevated Ry.*, 215 Mass. 467, 477 (1917). This statement applies with equal force to criminal cases in light of the trial judge's historic power to determine questions of law for the protection of criminal defendants. Cf. *Commonwealth* v. *Sheehy*, 412 Mass. 235, 240 (1992). In other words, "the traditional understanding in our system" is "that the application of the beyond-a-reasonable-doubt standard to the evidence is not irretrievably committed to jury discretion." *Jackson* v. *Vir-*

---

[5]In the words of one commentator, the early directed verdict "was either instruction on the law or advice on the facts, or a mixture of the two. It was not a device for taking a case from a jury . . . ." W.W. Blume, Origin and Development of the Directed Verdict, 48 Mich. L. Rev. 555, 561 (1950). See Quincy, Reports of Cases in Juries of Superior Court of Massachusetts Bay (1761-1772) 382 & n.1, 556, 558, 564-565, 566 (1865 ed.); 2 Legal Papers of John Adams 406-408 (L. Wroth & H. Zobel eds. 1965).

*ginia,* 443 U.S. 307, 317 n.10 (1979). See *Commonwealth* v. *Anthes,* 5 Gray 185 (1855); *Commonwealth* v. *Porter,* 10 Met. 263 (1845). Cf. *BMW of North Am., Inc.* v. *Gore,* 517 U.S. 559, 573 n.17 (1996).

It was only in 1963 that G. L. c. 278, § 11, was amended to provide that judges must enter verdicts for defendants in certain circumstances. See St. 1963, c. 569. The Commonwealth's argument accordingly fails to the extent it rests solely on the ground that judges do not have the power to direct a verdict apart from statute. Cf. *Galloway* v. *United States,* 319 U.S. 372, 389-395 (1943). The Commonwealth's argument fares no better to the extent that it rests on the notion that a judge's power to direct a verdict for the defendant manifests itself no earlier than the close of the Commonwealth's evidence. This notion lacks support in our case law as well as in reason. Cf. *Oscanyan* v. *Arms Co.,* 103 U.S. 261, 265 (1880) ("Indeed, there can be, at this day, no serious doubt that the court may at any time direct a verdict when the facts are undisputed . . .").

In recent times we have repeatedly said without elaboration that a judge cannot be required to direct a verdict in a criminal case after the prosecutor's opening statement. See *Rosenberg* v. *Commonwealth,* 372 Mass. 59, 61 (1977); *Commonwealth* v. *Sandler,* 368 Mass. 729 (1975), and cases cited; *Commonwealth* v. *Bader,* 285 Mass. 574, 575 (1934). Compare *Perry* v. *Carter,* 332 Mass. 508, 509 (1955). If a judge lacked the power to direct a verdict after the opening, one might wonder why we did not say so in any of these cases. Cf. *Commonwealth* v. *Dietrich,* 381 Mass. 458, 460, 463 (1980). This court had said decades earlier that a judge has the power to direct a verdict after an opening in a civil trial. See *Hey* v. *Prime,* 197 Mass. 474, 475 (1908); *Stevens* v. *Nichols,* 155 Mass. 472 (1892); *Howe* v. *Dickinson,* 154 Mass. 494 (1891).

In *Commonwealth* v. *Hare,* 361 Mass. 263 (1972), we strongly suggested that a judge has the power to direct a verdict of acquittal after a prosecutor's opening. There we said that, "[i]f the bill of particulars in the instant case in fact presents the total extent of the Commonwealth's proof, we think, without so deciding, that the allowance of a motion for a directed verdict might well be required at the conclusion of the Commonwealth's opening statement or at the close of the Commonwealth's case." *Id.* at 270. We made a like suggestion in *Commonwealth* v. *Pope,* 397 Mass. 275, 282 n.10 (1986), in which we said that a

motion for a required finding of not guilty was "premature" when made at the close of the Commonwealth's opening statement. Accord *Commonwealth* v. *Brusgulis*, 398 Mass. 325, 333 n.15 (1986). We then said that "the judge *need not* have ruled on the motion until after the Commonwealth's evidence was closed" (emphasis added). *Commonwealth* v. *Pope, supra* at 282 n.10.[6]

We conclude that judges have inherent power to enter a finding of not guilty in a criminal case after the prosecutor's opening statement.[7] This is true not only because of the history of the development of the directed verdict and the strong suggestions in our recent cases, but because of what we have said generally about the power of courts to terminate a criminal trial. "A court may terminate a prosecution by discharging a defendant . . . during a trial" (citation omitted). *Commonwealth* v. *Hart*, 149 Mass. 7, 9 (1889). That is precisely what the judge did in this case. There is more than one way, of course, in which a judge may exercise this power. He may, for example, terminate a prosecution by declaring a mistrial. If he does so over the defendant's objection without a manifest necessity for the act, the Commonwealth is barred on double jeopardy grounds from retrying the defendant. See *Collins* v. *Commonwealth*, 412 Mass. 349, 352 (1992). Cf. *United States* v. *Perez*, 9 Wheat. (11 U.S.) 579, 580 (1824). Regardless of

---

[6]The United States Court of Appeals for the First Circuit has stated repeatedly that directed verdicts of not guilty are permitted after the opening statement in some circumstances. See *United States* v. *Graham*, 146 F.3d 6, 10 (1st Cir. 1998); *United States* v. *Ingraldi*, 793 F.2d 408, 414 (1st Cir. 1986), citing *United States* v. *Oliver*, 570 F.2d 397, 400 (1st Cir. 1978). Cf. *In re United States*, 286 F.2d 556, 562 (1st Cir. 1961), rev'd on other grounds, *Fong Foo* v. *United States*, 369 U.S. 141 (1962).

In *United States* v. *Weissman*, 266 U.S. 377 (1925), the trial judge entered a directed verdict of acquittal though "nothing had been submitted to the jury, no evidence, not even an opening statement." *Id.* at 378. Then Justice Holmes, writing for the Court, said that, "if directing the verdict was wrong it certainly was not beyond the jurisdiction of the Court. The jury were there and the prisoners before them, and so far as jurisdiction is concerned it did not matter whether evidence had been put in or not. . . . [W]e do not mean to imply that an opening by counsel or the offer of evidence is necessary in order to justify directing a verdict of not guilty; there are other cases in which it is done." *Id.* at 379.

[7]In so concluding, we join a majority of the courts that have decided this question. See Annot., Power of Trial Court to Dismiss Prosecution or Direct Acquittal on Basis of Prosecutor's Opening Statement, 75 A.L.R.3d 649, 653 (1977 & Supp. 1999).

whether it can be said that a judge has rightful authority to do such a thing, it is clear that the judge has the power to do it, and that the exercise of this power has irrevocable legal consequences. It is no different for acquittals.

3. *Whether the judge's action violated art. 30 of the Declaration of Rights.* Citing *Commonwealth* v. *Gordon*, 410 Mass. 498 (1991), the Commonwealth suggests that the judge's premature entry of the finding of not guilty in this case violated art. 30 of the Massachusetts Declaration of Rights. In *Gordon*, the defendant was charged with murder in the first degree. Over the prosecutor's objection, the judge accepted the defendant's plea of guilty of murder in the second degree. We held that the judge's action violated art. 30. See *id.* at 498. We emphasized that the case did not involve a judge's authority to order "a dismissal of an indictment on a legal basis." *Id.* at 502. We enumerated a number of instances of valid exercises of this power, among which was the dismissal of an indictment "for insufficiency of the evidence to be presented at trial." *Id.*, citing *Rosenberg* v. *Commonwealth*, 372 Mass. 59 (1977). "All those powers," we said, "involve either rulings of law or exercises of discretion *after* the Commonwealth has had a full and fair opportunity to present its case. By contrast, pretrial dismissal of a lawful complaint prematurely cuts off the prosecution without a legal basis" (emphasis in original). *Commonwealth* v. *Gordon*, *supra* at 502-503. Unlike the judicial action held unconstitutional in *Gordon*, the judge's decision in this case was made on a legal basis. He ruled as a matter of law that the evidence that the prosecutor would present was inadequate to prove that the defendant had committed the crimes of which he stood accused. The question of the legal effect of the prosecution's evidence was a question within the judge's province; and as we have explained, judges have power to rule on the question at any stage of a trial. An entry of a finding of not guilty is not a nolle prosequi. See, e.g., *Commonwealth* v. *Hart*, *supra*. The Commonwealth's art. 30 claim fails.

4. *Principles to guide judges in deciding whether to enter an early finding of not guilty.* The "overwhelming majority" of courts have held that motions to acquit a defendant made after an opening statement "should be denied unless it clearly appears from the opening statement that the defendant cannot be lawfully convicted and then only after the prosecutor has been made aware of the difficulty and fails or is otherwise unable to

correct it." *People* v. *Kurtz*, 51 N.Y.2d 380, 385 (1980), cert. denied, 451 U.S. 911 (1981). We adopt this standard. We foresee two circumstances in which the entry of a finding of not guilty after an opening statement might be warranted: (1) the statement "clearly and deliberately" admits a fact "which must necessarily prevent a conviction and require an acquittal," *United States* v. *Dietrich*, 126 F. 676, 677 (C.C.D. Neb. 1904); and (2) the statement "embraces all operative facts to be proven at trial and those facts are insufficient to sustain a claim for relief under any legal theory," showing unmistakably that the prosecutor's evidence cannot prove one or more elements of the offense charged. 9 Moore's Federal Practice par. 50.20[2][b], at 50-42 (Supp. Dec. 1999). In either of these circumstances, "the basic facts lead inescapably to a conclusion that the prosecution must fail" regardless of the light in which the facts are viewed. 2 C.A. Wright, Federal Practice and Procedure § 462, at 639 (2d ed. 1982).[8]

Trial judges must adhere to this standard with strictness because the Commonwealth is otherwise barred from retrying the defendant. A judge who directs a verdict in violation of the standard abuses his or her discretion. See *United States* v. *Donsky*, 825 F.2d 746, 751 (3d Cir. 1987). Cf. *Commonwealth* v. *Steward*, 396 Mass. 76, 79 (1985), citing *Jones* v. *Commonwealth*, 379 Mass. 607, 617 (1980). If the question in a given case is at all close, if it depends on a conclusion of law or an assessment of the evidence that is fairly questionable, then the judge should refrain from entering an early finding of not guilty. See 9 Moore, *supra* at par. 50.20[2][b], at 50-43 ("If the court entertains *any doubt* as to the propriety of granting a pre-verdict motion, the court should wait . . ." [emphasis added]); *Douglas* v. *Whittaker*, 324 Mass. 398, 399-400 (1949). The judge will not err by waiting; judges are not required to enter premature findings of not guilty. See, e.g., *Rosenberg* v. *Commonwealth*, 372 Mass. 59, 61 (1977). But cf. *Commonwealth* v. *Hare*, 361 Mass. 263, 270 (1972).

Acquittals that depart from this standard do violence to the weighty public interest in ensuring that wrongdoers are convicted of the crimes that they commit. See *Commonwealth*

---

[8]We acknowledge that some appellate courts would allow trial judges to direct a verdict after the opening only in the first circumstance, but not in the second. See, e.g., *United States* v. *Donsky*, 825 F.2d 746, 751-752 (3d Cir. 1987).

v. *Therrien,* 383 Mass. 529, 531 (1981). The Commonwealth, as well as a criminal defendant, has the right to a fair trial. See *Commonwealth* v. *Roy,* 349 Mass. 224, 227 (1965). And the Commonwealth's counsel has a right to try his or her case without interference, subject to well known limits. See *Commonwealth* v. *Bearse,* 358 Mass. 481, 487 (1970); *Commonwealth* v. *Hartford,* 346 Mass. 482, 486 (1963); *Commonwealth* v. *Trung Chi Truong,* 34 Mass. App. Ct. 668, 671 (1993).

What we said about this topic in *Douglas* v. *Whittaker, supra,* a civil case, applies all the more strongly to criminal trials. "The opening is to be examined with care and the power to dispose of the case on the opening must be exercised cautiously. It should not be exercised until it is apparent that the plaintiff cannot supply the evidence necessary to establish his case. Cases should be decided upon sworn evidence rather than upon an anticipatory statement of counsel which might bear little resemblance to the available evidence." *Id.* See *Aragona* v. *Parrella,* 325 Mass. 583, 584 (1950). Rather than speculate about evidence that they have not heard, judges should wait for the Commonwealth to present its case.

In the rare case when an early finding of not guilty may seem proper, two procedural safeguards should be followed: "(1) counsel must be given full opportunity to be heard and (2) the trial judge must give careful consideration to alternatives." *Commonwealth* v. *Steward,* 396 Mass. 76, 79 (1985). Compare Fed. R. Crim. P. 26.3. The trial judge must always make clear to the prosecutor the basis for his belief that the evidence to be presented cannot sustain a verdict of guilty. The prosecutor must then have full opportunity to explain why he thinks the judge's impression is erroneous and to correct "any ambiguity, error, or omission in the [opening] statement." *United States* v. *Dietrich, supra* at 677. Accord *People* v. *Kurtz,* 51 N.Y.2d 380, 385-386 (1980).[9] The judge must then consider less drastic alternatives to entering the finding, including declaring a mistrial, see *Commonwealth* v. *Smith,* 404 Mass. 1, 4-5 (1989),

---

[9]The judge must "make sure that the case has been fully stated" before deciding whether to direct a verdict. *Carbone* v. *Trustees of N.Y., N.H. & H.R.R.,* 320 Mass. 710, 714 (1947). Cf. *Commonwealth* v. *Clark,* 393 Mass. 361, 366 (1984) ("Only when all relevant evidence is disclosed [prior to trial] can a ruling upon the sufficiency of the evidence be appropriately made" pursuant to *Commonwealth* v. *Brandano,* 359 Mass. 332 [1971]).

or issuing curative instructions to the jury. See *Commonwealth* v. *Hoilett*, 430 Mass. 369, 372 (1999); *Commonwealth* v. *Trung Chi Truong, supra* at 671, and cases cited. The judge must discuss such alternatives with counsel before deciding to acquit. The judge must state on the record the reasons for his decision to acquit. Cf. *Lovett* v. *Commonwealth*, 393 Mass. 444, 447 (1984).

5. *Whether the judge in this case abused his discretion by entering an early finding of not guilty.* After the defense attorney objected to the opening, the judge listened at length without interruption. The judge then launched into a rapid-fire interrogation of the prosecutor. The prosecutor got few words in edgewise. The judge stated that the opening did not raise a sufficient case for the jury. The prosecutor asked to be heard, but the judge cut him off. When the prosecutor tried to respond, the judge abruptly announced that he would be directing a verdict for the defendant. The prosecutor objected and again asked to be heard. The judge repeated that he would be directing a verdict. The prosecutor made a final effort to articulate the reasons for his objection, which the judge interrupted. When the prosecutor replied, not without cause, that, "If you don't want to hear from me, I won't be heard," the judge ordered the prosecutor not to say anything more, repeating that the case was "directed out." We hold that the judge abused his discretion.

First, the judge deprived the prosecutor of an opportunity to be heard on a decision that terminated the trial and permanently barred convicting the defendant on the charges of which he was accused. Second, the judge did not consider alternatives to entering findings of not guilty. Defense counsel had not even asked the judge for the entry of findings of not guilty, and the judge denied the prosecutor an opportunity to correct any deficiency in the opening statement.

6. *Whether double jeopardy principles bar a retrial.* A criminal defendant has a constitutional right not to be placed in jeopardy twice for the same offense. See *Commonwealth* v. *Super*, 431 Mass. 492, 496 (2000), and cases cited. When a defendant has been put in jeopardy for an offense and acquitted, he may not be retried for that offense. See *Sanabria* v. *United States*, 437 U.S. 54, 64 (1978). The Commonwealth argues that, because the judge lacked authority to enter a finding of not guilty after the opening, the judge's action was not a true acquittal. The same argument in substance was rejected by the United

States Supreme Court in its per curiam opinion in *Fong Foo* v. *United States*, 369 U.S. 141 (1962), rev'g *In re United States*, 286 F.2d 556 (1st Cir. 1961).

In *Fong Foo* v. *United States*, *supra*, the trial judge directed verdicts of acquittal before the government's fourth witness had finished testifying. The judge's action "was based upon one or both of two grounds: supposed improper conduct on the part of the Assistant United States Attorney who was prosecuting the case, and a supposed lack of credibility in the testimony of the witnesses for the prosecution who had testified up to that point." *Id.* at 142. The United States Court of Appeals for the First Circuit issued a writ of mandamus to the trial judge, directing that the acquittal be vacated and the case reassigned for trial. The court reasoned that the trial judge lacked the power to direct a verdict for the defendants in the circumstances of the case. The United States Supreme Court held that the Fifth Amendment to the United States Constitution forbade the Court of Appeals from setting aside the verdict and ordering a retrial. "The petitioners were tried under a valid indictment in a federal court which had jurisdiction over them and over the subject matter. The trial did not terminate prior to the entry of judgment . . . . It terminated with the entry of a final judgment of acquittal as to each petitioner. The Court of Appeals thought, not without reason, that the acquittal was based upon an egregiously erroneous foundation. Nevertheless, '[t]he verdict of acquittal was final, and could not be reviewed . . . without putting [the petitioners] twice in jeopardy, and thereby violating the Constitution.' " (Citations omitted.) *Id.* at 143, quoting *United States* v. *Ball*, 163 U.S. 662, 671 (1896).

We perceive no difference between this case and *Fong Foo* that would allow us to conclude that the defendant may be retried. Here as in *Fong Foo*, the judge unquestionably had jurisdiction to try the case. Cf. *Commonwealth* v. *Lovett*, 374 Mass. 394, 397-398 (1978), and cases cited; *Commonwealth* v. *Zawatsky*, 41 Mass. App. Ct. 392, 397 n.6 (1996), and cases cited. Cf. *United States* v. *Weissman*, 266 U.S. 377, 379 (1925) ("if directing the verdict was wrong it certainly was not beyond the jurisdiction of the Court"). As in *Fong Foo*, the ruling as to the charged offenses that terminated the trial was an acquittal "in substance as well as form": for the judge "evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction." *United States* v. *Martin Linen*

*Supply Co.*, 430 U.S. 564, 572 (1977). See *id.* at 571; *Commonwealth* v. *Brusgulis*, 398 Mass. 325, 333 (1986). Compare *Commonwealth* v. *Hart*, 149 Mass. 7, 9 (1889).[10]

There is only one difference between this case and *Fong Foo* that is conceivably relevant to the double jeopardy inquiry: the finding of not guilty in this case was entered immediately after the opening statement, rather than after a few witnesses had testified. This distinction cannot carry the day for the Commonwealth. It is true that double jeopardy protections "are implicated only when the accused has actually been placed in jeopardy." *United States* v. *Martin Linen Supply Co., supra* at 564, 569. In this case, however, there is no question that the defendant was in jeopardy when the judge ended the trial. "[I]n a jury trial, jeopardy attaches when the jurors are sworn." *Commonwealth* v. *Super, supra* at 496. See *Crist* v. *Bretz*, 437 U.S. 28, 38 (1978) ("The [F]ederal rule that jeopardy attaches when the jury is empaneled and sworn is an integral part of the constitutional guarantee against double jeopardy"); *United States* v. *Martin Linen Supply Co., supra*; *Commonwealth* v. *Tuck*, 20 Pick. 356, 365-366 (1838).

Retrial would be barred in this case, we think, even if the judge had lacked the authority to direct a verdict after the opening. In *Sanabria* v. *United States*, 437 U.S. 54 (1978), the Court noted that in *Fong Foo* the Court of Appeals had "held that the District Court . . . lacked power to direct a verdict of acquittal before the Government rested its case. We accepted the Court of Appeals' holding that the District Court had erred, but nevertheless found that the Double Jeopardy Clause was violated . . ." (footnote and quotations omitted). *Sanabria* v. *United States, supra* at 64. The Court went on to say that "when a defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal were erroneous." *Id.* See *id.* at 75; *Arizona* v. *Washington*, 434 U.S. 497, 503 (1978). See also *United States* v. *Ingraldi*, 793 F.2d 408, 414 (1st Cir. 1986) (regardless of whether trial court had authority to enter judgment of acquittal after government's opening statement, double jeopardy principles would bar government from appealing such a judgment), citing *Fong Foo, supra.*

---

[10] "It is without constitutional significance that the court entered a judgment of acquittal rather than directing the jury to bring in a verdict of acquittal or giving it erroneous instructions that resulted in an acquittal." *Sanabria* v. *United States*, 437 U.S. 54, 64 n.18 (1978).

The cases cited by the Commonwealth are not apposite. In *Commonwealth* v. *Babb*, 389 Mass. 275 (1983), double jeopardy did not bar a retrial because the trial judge "did not intend to make, and did not make, a determination of the defendant's guilt or innocence of the crimes charged" when he dismissed complaints against the defendant. *Id.* at 281. *Commonwealth* v. *Brusgulis*, 398 Mass. 325, 333 (1986), *Commonwealth* v. *Smith*, 404 Mass. 1, 4-5 (1989), and *Commonwealth* v. *Andrews*, 403 Mass. 441, 447-448 (1988), each involved a mistrial or the analytical equivalent of a mistrial. The principle that a defendant who invites a mistrial usually may not claim double jeopardy protection against retrial, see *Commonwealth* v. *Lam Hue To*, 391 Mass. 301, 310-311 (1984), does not apply to directed acquittals. See *United States ex rel. Young* v. *Lane*, 768 F.2d 834, 839 (7th Cir.), cert. denied, 474 U.S. 951 (1985). Cf. *Commonwealth* v. *Lam Hue To, supra* at 311.

The order of the single justice is affirmed.

*So ordered.*